IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| | § | |
| v. | § | Criminal No. 4:25-cr-00415 |
| | § | |
| | § | |
| MARIO ALBERTO AVILA LIZARRAGA | § | |
| AND RAMON ALEXANDRO ROVIROSA | § | |
| MARTINEZ, | § | |
| | § | |
| Defendants. | § | |

## GOVERNMENT'S COMBINED MOTIONS IN LIMINE

The United States submits the following Motions in Limine seeking the entry of pretrial orders governing the conduct of the upcoming trial. The motions, which are outlined below, request that the Court preclude Rovirosa from offering impermissible evidence or arguments that would violate the Rules of Evidence or otherwise attempt to interfere with the jurors' sworn oaths to impartially and fairly judge the facts.[1]

### A.  Motion in Limine 1 – "Cartel" References

To date, Rovirosa has filed at least seven pretrial motions. Although they each seek different forms of relief, there is one common thread between all of them: references to Rovirosa's alleged connection to cartels and its purported relevance to both jury selection and the trial itself. It stands to reason from these filings that Rovirosa's counsel fully intends to inject into the trial needless distraction and confusion by attempting to make it about cartels[2], rather

---

[1]      The Government acknowledges that Rovirosa has filed Omnibus Motions in Limine. Dkt. No. 43. The Government expects to respond to those Motions at or before the pre-trial conference on September 29, 2025.

[2]      To be clear, the Government stands by the arguments it has made in response to these motions and reaffirms that Rovirosa's connections to possible cartel affiliates—combined with his ownership of a private

than the charges in the Indictment. For example, one of Rovirosa's Motions to Dismiss states:

> [E]ven assuming a trial, Mr. Rovirosa will now have to address this issue with the jurors in *voir dire*, contend with it as part of the trial (explaining why the prosecutors would bring a "cartel" FCPA case to the petit panel) and challenge the "cartel" investigation when questioning witnesses (it is the reason prosecutors brought this case). He must prove the unprovable (a negative), that he is not a member of a cartel, because the government put it out there with their landmine filing and globally distributed false story. They have forced Mr. Rovirosa to put on a cartel case; shored up their weak FCPA text message case by painting Mr. Rovirosa as a supervillain and making him prove he is not.

Dkt. No. 33 at 29.

It is unclear what Rovirosa's counsel stands to gain from this self-destructive strategy. There is no reason for defense counsel to question witnesses about cartels or explain anything at all as to why defense counsel believes prosecutors brought this case. Similarly, as the Government will explain in its response to Rovirosa's 46-page Motion to Dismiss, there is no reason why bringing up the word "cartel" would be necessary during *voir dire*. Indeed, as is always the case, the Court will question jurors and ask whether they had previously read press coverage concerning the allegations or the defendants themselves. *Skilling v. United States*, 561 U.S. 358, 389 (2010) (favorably highlighting the fact that "the court examined each prospective juror individually, thus preventing the spread of any prejudicial information to other venire members"). In the event that certain jurors are in fact aware of the case, the Court is fully capable of conducting a detailed, separate inquiry of those jurors without tainting the rest of the jury pool.

The Government's position is clear: although evidence supports the allegation that Rovirosa is connected to cartels in various ways, this case is not "about cartels," and the Government does not intend to discuss cartels s or otherwise reference Rovirosa's alleged cartel

---

plane—was a proper argument in support of stringent bond conditions. The Government disagrees, however, that it is necessary for either the Government or the defense to raise his alleged connections to cartels at trial.

connections in its case-in-chief. To the extent that Rovirosa's counsel has a legitimate, probative reason to raise his alleged connections to cartels at trial, counsel should approach the bench and seek a ruling beforehand.

### B.  <u>Motion in Limine 2 – Jury Nullification Arguments</u>

The Government requests an order prohibiting Rovirosa's counsel from making arguments or eliciting testimony that invites jury nullification or otherwise encourages the jury to disregard its sworn duty to apply and follow the law.

A defendant may not invite or encourage the jury to disregard its duty to apply the law as instructed by the Court. *United States v. Thompson*, 253 F.3d. 700 (5th Cir. 2001) ("Jury nullification is not a 'right' belonging to the defendant."). *See also United States v. Funches*, 135 F.3d 1405, 1408 (11th Cir. 1998) (finding that counsel may not encourage the jury to disregard its duty to apply the law as instructed by court); *United States v. Thomas*, 116 F.3d 606, 614 (2d Cir. 1997) ("We categorically reject the idea that, in a society committed to the rule of law, jury nullification is desirable or that courts may permit it to occur when it is within their authority to prevent."); *United States v. Sepulveda*, 15 F.3d 1161, 1190 (1st Cir. 1993) ("A trial judge…may block defense attorneys' attempts to serenade a jury with the siren song of nullification...").

The Government respectfully requests an order instructing Rovirosa's counsel not to introduce evidence of or make references to jury nullification at trial.

### C.  <u>Motion in Limine 3 – Statements Regarding Race or Prosecutorial Motives</u>

The Government moves the Court for an order directing defense counsel not to comment on prosecutorial motives, or to make nullification-esque arguments to the jury relating to alleged selective prosecution. Again, Rovirosa's pleadings indicate that he will attempt to inject plainly improper considerations at the upcoming trial. Among other things, Rovirosa claims that the

"only reason he was prosecuted is because he is a wealthy Mexican" and the Government "needed a Mexican cartel scalp" because "no one cares about the FCPA." *See* Dkt. No. 33 at 39–40. These are not proper considerations for the jury to consider, and such arguments risk misleading the jury concerning the specific charges in the Indictment. *United States v. Reed*, 641 F.3d 992, 994 (8th Cir. 2011); *United States v. Pitt–Des Moines, Inc.*, 168 F.3d 976, 991–92 (7th Cir. 1999); *United States v. Delgado*, 903 F.2d 1495, 1499 (11th Cir. 1990). If anything, these arguments are nothing more than attempts to convince the jury to ignore their sworn oaths. *See*, *e.g.*, *United States v. Impatasto*, No. 05-325, 2007 WL 2463310, at *5 (E.D. La. Aug. 28, 2007) (attached as Ex. 1) (granting motion in limine regarding "prosecutorial motives" in part to ensure that defendants do not "prejudice the jury by raising an inference of selective prosecution"); *see also United States v. Craige-Roberson*, No. 16-109, 2017 WL 3894694, at *1 (E.D. La. Sept. 16, 2017) (attached as Ex. 2) (granting agreed motion to prohibit counsel from "introducing evidence or making any arguments or reference regarding race or prosecutorial motives").

### D.  Motion in Limine 4 – Interview Reports as Impeachment Material

The Government moves the Court for an order directing defense counsel not to use the interview reports prepared by law enforcement to impeach Government witnesses.

An interview report has no impeachment value unless it has been adopted by the witness or it reflects a substantially verbatim transcription. *See United States v. Miller*, 1995 WL 581492, at *4 (5th Cir. Aug. 23, 1995) (attached as Ex. 3) ("[A]gent's interview notes are not 'statements' of the witness under § 3500(e) unless the witness 'signed or otherwise adopted or approved the report,' 18 U.S.C. § 3500(e)(1), or the notes were 'substantially verbatim reports' of the witness interview, 18 U.S.C. § 3500(e)(2)." (alteration in original) (quoting *United States v. Pierce*, 893 F.2d 669, 675 (5th Cir. 1990)). *See also Palermo v. United States*, 360 U.S. 343, 349-52 (1959)

(finding it would "be grossly unfair to allow the defense to use statements to impeach a witness which could not fairly be said to be the witness' own rather than the product of the investigator's selections, interpretations and interpolations."); *United States v. Martinez*, 87 F.3d 731, 735-736 (5th Cir. 1996) (holding that a summary report of a witness interview prepared by the agent was not a "statement" of the witness); Fed. R. Evid. 613(b) (applies only to a prior inconsistent statement of the witness).

As with any case, the Government has produced several reports that summarize interviews with Government witnesses. None of these reports have been signed or adopted, and none are otherwise substantially verbatim recordings or transcripts of the interviews. Thus, these reports are not "statements" of the witnesses and cannot be used as impeachment material.

This Court should preclude Rovirosa from using the interview reports in this case to impeach Government witnesses at trial. Alternatively, the Government respectfully requests this Court order that, before Rovirosa can use a particular interview report as impeachment material, he seek and obtain an evidentiary ruling from this Court prior to proceeding. *See United States v. Judon*, 581 F.2d 553, 554 (5th Cir. 1978) (per curiam) ("Whether the [reports] contain sufficiently extensive verbatim recitation to bring the notes within the [Jencks] Act is a matter of fact to be decided by the trial court on the basis of conflicting testimony.").

### E.  <u>Motion in Limine 5 – Evidence of Rovirosa's "Good Conduct"</u>

The Government requests that this Court direct Rovirosa and his witnesses not to refer to any specific instances of Rovirosa's "good" character or conduct. Such evidence is irrelevant to the charged conduct and will distract the jury from the trial issues.

1. <u>Rovirosa has very limited options for introducing character evidence</u>

The Federal Rules of Evidence and case law are clear on this point: a defendant may only

offer proof of a pertinent character trait through "testimony about the person's reputation or by testimony in the form of an opinion." Fed. R. Evid. 405(a) (emphasis added). *See United States v. Davenport*, 449 F.2d 696, 699 (5th Cir. 1971) ("The only type of evidence admissible to show defendant's character is proof of his reputation in the community."); *United States v. Romero*, 339 F. App'x 470, 472 (5th Cir. 2009) (on direct examination, the witness was permitted to testify only generally as to the defendant's "reputation" in the community as a "law-abiding person"); *United States v. Powell*, 124 F.3d 655 n.4 (5th Cir. 1997) (consistent with Fed. R. Evid. 405(a), defendant elicited testimony from a witness regarding the defendant's reputation in the community).

2. "Good conduct" evidence is barred

In cases such as this, where character is not an essential element of any charge in the Indictment, Rovirosa is strictly prohibited from attempting to prove any character trait through specific instances of conduct. Fed. R. Evid. 405(b). It is well established that "evidence of noncriminal conduct to negate the inference of criminal conduct is generally irrelevant" and not admissible." *United States v. Vincent*, 648 F.2d 1046, 1051 (5th Cir. 1981) (explaining that evidence must "relate . . . to the subject matter of the indictment"); *see also United States v. Scarpa*, 897 F.2d 63, 70 (2d Cir. 1990) ("A defendant may not seek to establish his innocence … through proof of the absence of criminal acts on specific occasions."). This rule is applied strictly, due to the potential for prejudice, confusion, and waste of time. *United States v. Gulley*, 526 F.3d 809, 818 (5th Cir. 2008) ("Rule 405(b) thus limits the use of specific prior acts to cases where character is at issue "in the strict sense" because that method of proof possesses the greatest capacity to arouse prejudice, to confuse, to surprise, and to consume time.").

For example, in *United States v. Marrero*, a case involving false claims and theft of

6

government property, the defendant sought to elicit testimony of specific "good acts" such as her provision of free psychotherapy services to needy patients, or instances where she under-billed for psychotherapy services. 904 F.2d 251, 259 (5th Cir. 1990). The Fifth Circuit upheld the district court's exclusion of the specific instances of good conduct under Rule 405 because it far exceeded the limited "reputation and opinion" testimony permissible under Rule 405(a). *Id.* at 260. Since the defendant's character was not an essential element of any charges against her, the specific instances of good conduct were inadmissible and correctly excluded by the district court. Moreover, the Fifth Circuit summarily rejected the defendant's attempt to smuggle the "good conduct" evidence into the case through her argument that the instances of her good conduct were relevant to her lack of motive or intent. "Such a tactic is not only disfavored, it is not permitted under Rule 405(b)." *Id.* Indeed, the court noted that "[t]he fact that Marrero did not overcharge in every instance in which she had an opportunity to do so is not relevant to whether she, in fact, overcharged as alleged in the indictment." *Id*.

In addition, in the event that any of the disputed evidence is deemed relevant, Federal Rule of Evidence 403 allows this Court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

Here, evidence of Rovirosa's "good conduct" (*e.g.*, the notion that Rovirosa did not engage in bribery on <u>every</u> possible occasion, or that his companies performed work under the illegally-procured contracts) is irrelevant to and will unduly distract the jury from the charged conduct in this case, which focuses on Rovirosa's bribery of foreign officials. *United States v. Grimm*, 568 F.2d 1136, 1138 (5th Cir. 1978) (excluding evidence of lawfully purchased vehicles

7

in a case charging conspiracy to transport stolen vehicles); *United States v. Nagin*, 2013 WL 5532516, at *1 (E.D. La. Oct. 4. 2013) (attached as Ex. 4) (finding evidence of "honest services" inadmissible in a kickbacks and bribery case).

### F.  <u>Motion in Limine 6 – References to the Presence or Absence of Any Particular Government Witness</u>

Rovirosa should be precluded from commenting on or asking the jury to draw any negative inference from the Government's decision to call or not call a particular witness at trial.

**<u>First</u>**, there are many reasons why the Government may or may not call every witness on its witness list, including that the witness may become unavailable, the witness may no longer be needed, the testimony may become cumulative, and the Government may simply run out of time. A jury could become confused if told that the Government listed a particular person on its witness list, but the person does not testify. For that reason, if the Government does not call a particular witness who is equally available to all parties, Rovirosa should not comment on the Government's decision in front of the jury.

**<u>Second</u>**, if "the witness is 'equally available' to both parties, any negative inference from one party's failure to call that witness is impermissible." *United States v. Wilson*, 322 F.3d 353, 363 n.14 (5th Cir. 2003) (quoting *McClanahan v. United States*, 230 F.2d 919, 925 (5th Cir. 1956)).

Thus, Rovirosa should not be able to comment or ask for negative inferences from the Government's decision to present or not to present certain witness testimony.

### G.  <u>Motion in Limine 7 – References to Potential Penalties or Consequences of Conviction</u>

The Government requests an order precluding Rovirosa from referencing or eliciting testimony or evidence regarding the potential criminal penalties he faces, or the consequences or impact of a criminal conviction on him or his family.

"[T]he jury [has] no sentencing function and should reach its verdict without regard to what sentence might be imposed." *Rogers v. United States*, 422 U.S. 35, 40 (1975). "The principle that juries are not to consider the consequences of their verdicts is a reflection of the basic division of labor in our legal system between judge and jury." *Shannon v. United States*, 512 U.S. 573, 579 (1994). "Information regarding the consequence of a verdict is therefore irrelevant to the jury's task." *Id.*

It would be entirely improper for Rovirosa to reference or allude to his potential sentence (or immigration consequences), or the consequences of a conviction on himself or his family. Such issues are not to be considered by a jury in reaching their verdict.

Accordingly, the Government requests an order precluding Rovirosa from referencing or eliciting testimony regarding the punishment or consequences of conviction.

**H.  Motion in Limine 8 – References to Prosecutors as Being From "Out of Town"**

In an abundance of caution, the Government requests that Rovirosa be precluded from making comments or arguments to the effect that any Government counsel is from out of town, is not local, or is not from the area. The residential status of counsel is not relevant, *see* Fed R. Evid. 401, and such comments or arguments risk creating unfair prejudice, confusing the issues, misleading the jury, and wasting time, *see* Fed. R. Evid. 403. Moreover, such comments invite jury nullification, which, as discussed above, is impermissible.

**I.  Motion in Limine 9 – References to Any Out-of-Court Statements Made by a Defendant if Offered to Prove the Truth of the Matter Asserted**

The Government requests an order precluding Rovirosa from introducing any of his own out-of-court statements to prove the truth of the matters asserted, because such statements would be inadmissible hearsay. Rovirosa may not introduce such hearsay statements through any witness—whether the Government's or Rovirosa's—because doing so would allow Rovirosa to

introduce his own self-serving statements without being subject to cross-examination. This includes any of Rovirosa's statements found within otherwise admissible documents, as such statements would be governed by the "hearsay within hearsay" rule. *See United States v. Dotson*, 821 F.2d 1034, 1035 (5th Cir. 1987) ("[T]he mere fact that one level of a multiple-level statement qualifies as 'non-hearsay' does not excuse the other levels from rule 805's mandate that each level satisfy an exception to the hearsay rule for the statement to be admissible.").

That principle remains true, even where a defendant has made otherwise inculpatory confessions in an interview. *Williamson v. United States*, 512 U.S. 594, 600-01 (1994) ("The district court may not just assume for purposes of Rule 804(b)(3) that a statement is self-inculpatory because it is part of a fuller confession, . . ."); *United States v. Ricardo*, 472 F.3d 277, 287 (5th Cir. 2006).

Moreover, the rule of completeness, as codified in Federal Rule of Evidence 106, does not permit Rovirosa to introduce self-serving hearsay simply because the Government has introduced Rovirosa's other statements through Government witnesses. Rule 106 applies only to written or recorded statements, and only when "fairness" dictates that another portion of that writing or recording "ought to be considered at the same time." Fed. R. Evid. 106. Even then, however, "Rule 106 does not compel admission of otherwise inadmissible hearsay evidence." *United States v. Collicott*, 92 F.3d 973, 983 (9th Cir. 1996) (quotation omitted). Furthermore, it is within the Court's discretion to "redact portions of a written statement containing inadmissible hearsay while admitting portions of the statement that are admissible." *United States v. Angleton*, 269 F. Supp. 2d 878, 885 (S.D. Tex. 2003). As a result, the Government seeks to preclude Rovirosa from introducing his own self-serving statements for the truth of the matters asserted.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that this Court grant the

above motions in limine.

Dated: September 24, 2025                    Respectfully submitted,

                                         Nicholas J. Ganjei
                                         United States Attorney

                                         Lorinda I. Laryea
                                         Acting Chief
                                         Criminal Division, Fraud Section

*/s/ Brad Gray*
Brad Gray
Assistant United States Attorney
Southern District of Texas

*/s/ Abdus Samad Pardesi*
Abdus Samad Pardesi
Lindsey D. Carson
Paul Ream
Trial Attorneys
Criminal Division, Fraud Section

## CERTIFICATE OF CONFERENCE

I certify that on September 22, 2025, I conferred with defense counsel, who stated that
they were opposed to the relief sought in this Omnibus Motion in Limine.

*/s/ Brad R. Gray*
Brad R. Gray
Assistant United States Attorney

<u>**CERTIFICATE OF SERVICE**</u>

I certify that, on September 24, 2025, the foregoing was filed with the Court through the CM/ECF system, which will notify all parties and counsel registered.

<u>*/s/ Abdus Samad Pardesi*</u>
Abdus Samad Pardesi
Trial Attorney – Criminal Division