UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| VS. | § | CRIMINAL NO. 4:25-CR-00415-1 |
| | § | |
| RAMON ALEXANDRO ROVIROSA | § | |
| MARTINEZ. | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

### I.    INTRODUCTION

Pending before the Court is the defendant's, Ramon Alexandro Rovirosa Martinez ("Rovirosa") third motion to dismiss[1] [DE 60] and the United States of America ("the government"), response in opposition [DEs 59 and 64].  The Court has examined the motion, responses, and the relevant case law, and determines that Rovirosa's motion to dismiss should be denied in all respects.

Rovirosa's motion also challenges the contents of his and co-defendant Mario Alberto, Lazarraga Avila's, cellular phone contacts that are now exhibits offered by the government.  In the course of its investigation, the government seized, Avila's cellphone and certain other devices that contained electronically stored or transmitted messages to Rovirosa and others that the government has labeled as co-conspirators.  Therefore, Rovirosa raises Confrontation Clause and FRE 403, 601, 604 and 802 objections.

---

[1] To the extent that the record is not clear regarding the defendant's first and second motions to dismiss, the Court now states that those motions are Denied.

## II.    RELEVANT FACTUAL BACKGROUND

### A.    *The Charges in General*

In a four Count Indictment filed on August 6, 2025, the government charges that Rovirosa, a lawful permanent resident of the United States, violated the Foreign Corrupt Practices Act of 1977 ("FCPA"), Title 15 U.S.C. § 78dd-1 *et. seq.*, by engaging in a conspiracy with Avila and other unnamed co-conspirators.  The government alleges that beginning around 2019 up to and including 2021, Rovirosa and Avila conducted in a bribery scheme whereby they "offered, paid, promised to pay, and authorize the payment of bribes . . . and other things of value . . . [to] foreign officials in Mexico . . ." in order to secure favorable treatment in the acquisition of contracts for services and materials from a company owned by the government of Mexico.

### B.    *The Alleged Structure of the Scheme*

The government of Mexico engages in the exploration, production, refining and sale of its oil reserves through Petroles Mexicanos ("PEMEX").  PEMEX, in turn, operates through several subsidiaries, one of which is PEMEX Exploration y Production ("PEP").  A series of companies, known as the Mexico Energy Companies ("MEC"), allegedly owned or controlled and associated with Rovirosa and Avila, were used to engage in the alleged bribery scheme(s).  The objective was, in exchange for PEMEX/PEP officials taking certain actions that would provide advantage to MEC, cooperating officials would receive money and/or gifts from Rovirosa and Avila or MEC.

### C.    *The Specific Count Charges*

In Count One of the Indictment, the government charges that, starting in 2019, Rovirosa and Avila, along with other unnamed persons, engaged in a Conspiracy to pay bribes to certain foreign officials to obtain and perhaps retain business with PEP, in violation of Title 18 U.S.C. § 371.  Counts Two through Four charge that Rovirosa and Avila, by their conspiratorious' conduct,

violated Title 15 U.S.C. § 78dd2 and Title 18 U.S.C. § 2.  These three counts assert that on November 8, 2019, March 5, 2020 and March 6, 2020, Rovirosa and Avila, acting together, aided and abetted each other to violate the FCPA.

## III.  THE DEFENDANT'S MOTIONS TO DISMISS

In his motion to dismiss, Rovirosa raises issues concerning the admissibility of certain email transmissions and WhatsApp messages that were taken from the cellphones of Rovirosa and Avila.  First, Rovirosa asserts that the entirety of Avila's phone content should be excluded.  The alleged conversations or exchanges were spoken in Spanish and required translation from Spanish to English.  Because the government does not intend to call any of the interpreter(s) as witnesses in the case, Rovirosa asserts that he is denied "due process", the Sixth Amendment right to cross-examine the interpreters concerning their qualifications, the reliability of their translations, their motives to mislead, their language skills and whether certain words spoken by the speaker, such as slang words, have been properly translated.

Second, Rovirosa raises an issue of the admissibility of the emails and messaging between Avila and others.  He asserts that the documents are "hearsay" in light of the fact that he was not present nor authorized the messages.  Moreover, he argues, the government's witness who will testify concerning the emails and other transmissions, cannot vouch for the statements or be cross-examined concerning the documents contents.  In other words, the testifying witness will be commenting on the process that the government used to translate the email but cannot read or speak Spanish and, therefore, explain the contents.  Hence, he challenges the authenticity of the interpretations in the absence of the interpreters, all or most of whom, he argues, are foreigners and/or co-conspirators.

Third, Rovirosa asserts that the government's case focuses on the content of Avila's phone and electronic devices; therefore, there will be no evidence establishing that Rovirosa knew or sanctioned what Avila was representing to others.

In light of the government's intent to offer into evidence Avila's phone contents, early on Rovirosa requested access to Avila's cell phone on September 2, 2025. Then he filed a motion to compel on September 8. On October 1 or, the eve of trial, the government had not granted access to Avila's cellphone. Instead, Rovirosa received 753,000 materials dump. This late proffer is still in process and is the subject of a Rovirosa's supplemental oral motion to strike or deny admission of any exhibits offered by the government from Avila's cellphone, particularly the 753,000 documents. Rovirosa argues that the government has violated the Court's Order [DE 13] to comply with *Brady v. Maryland* and should be sanctioned.

## IV.    THE GOVERNMENT'S RESPONSE

The government counters that all translations exhibit offered were made by a qualified translator and are supported by a certification affirming that the translation is true and accurate, pursuant to Fed. R. Evid. 604. The government, therefore, argues that Rovirosa's "blanket" objection is unspecific and should be overruled as such. Additionally, the government asserts that Fifth Circuit authority directs that if a defendant believes that a translation is inaccurate, he may offer his own version(s). Therefore, the government argues admissibility of its exhibits should not be an issue in this case.

The government makes a similar argument concerning text messages and WhatsApp messages that were located on Avila's cellphone or other devices. In these regards, the government argues that Rovirosa's claim that these communications are "testimonial" in nature and therefore

barred as hearsay is flawed.  Moreover, the government asserts they are not hearsay and do not violate the Confrontation Clause.

## V.    ANALYSIS AND DISCUSSION

Rovirosa's motion to dismiss raises three issues that this memorandum addresses.  First, he seeks dismissal of Avila's emails, text messages and WhatsApp messages.  Second, he seeks dismissal of the Indictment, as a whole, based on claimed "hearsay" violations.  And finally, he seeks dismissal of the Indictment in its entirety based on alleged violations of the Sixth Amendment to the federal Constitution, (the Confrontation Clause).  The Court will address each of these claims in turn.

### A.    *The October Documents Production*

The October 2025 production of documents became an issue when the government, in the course of checking its required and promised productions from the Avila devices, discovered that some 753,000 documents had not been captured by the protocol used. Therefore, the production process failed.  It is undisputed that these documents are non-privileged materials and were erroneously omitted from earlier productions.

Rovirosa asserts that he cannot move forward because these omissions are . . . "constitutional violations and have caused him irreparable prejudice".  He argues that the government's conduct violates Fed. R. Crim. P. 5(f) and the Due Process Protection Act. Therefore, dismissal of all of Aliva's communications is in order.  Additionally, Rovirosa argues, the Magistrate Judge August 11, 2025, order admonished the government of the consequences for violating his order at the arraignment proceeding.  *See* [DE 13].  Rovirosa cites *Andrew v. White,* 604 U.S. 86, 96 (2025) as authority for dismissal based on a "due process" violation.

The Due Process clause certainly serves the purpose of protecting against the introduction of unduly prejudicial evidence. *Andrew*, 604 U.S. 86 (2025). Assuming that the government establishes that Rovirosa, Avila and others were engaged in a conspiracy that violated the FCPA, the admission of emails and other electronic communications between the conspirators would not be prejudicial as argued by Rovirosa.

The government asserts that while it failed to produce the 753,000 documents and/or messages, that failing was unintentional and therefore not fatal. Hence, the government points to both *United States v. Swanson*, 894 F.3d 677 (5th Cir. 2018), and *United States v. Garrett,* 238 F.3d 293 (5th Cir. 2000), as holding that dismissal or exclusion of late produced materials is not the proper remedy. Moreover, the government argues, the fact that it was tardy in releasing discovery does not violate *Brady,* particularly since the trial has not commenced.

The Court agrees. The *Swanson/Garrett* cases are authoritative on this issue. They hold that in order to establish a *Brady* violation, the excluded evidence must favor the defendant that it was intentionally or recklessly suppressed by the government, and that it was material. Rovirosa cannot make this showing. There is no evidence that the error related to evidence that was material to the case and favorable to Rovirosa. It is clear that the omission was unintentional. The remedy, it appears, would be a continuance. When asked by the Court whether the defense desired a continuance, the defense rejected the opportunity opting to proceed promptly. Therefore, Rovirosa's motion to strike the Avila documents or, alternatively, dismiss the Indictment on account of the government's failing, is Denied.

B.    *Hearsay Statements – Confrontation Clause*

Rovirosa next argues that the withheld evidence, as well as the communications between Avila and third parties, should be excluded as hearsay. To the extent that Rovirosa was not

engaged in a conspiracy with Avila and/or others at the time of the messages, Rovirosa is correct. The messages would be hearsay and inadmissible. However, to the extent that the messages were communicated during the existence of a conspiracy between Rovirosa and Avila and were in furtherance of a conspiracy, the messages are admissible. *See* [FRE 104(a)].

Rovirosa relies on *United States v. Martinez-Gaytan*, 213 F.3d 890, 892 (5th Cir. 2000), among other authorities for the legal proposition that in certain 'unusual circumstances', a translator may be more than a merely language conduit as is expected of the usual translator. When the translation appears reliable, its unreliable status, must be established before the translation becomes hearsay. *Gayton* does not apply here because the written communications between Rovirosa and Avila, and between Avila and the alleged co-conspirators were established by certified translators. As well, because the persons engaged in the communications are alleged co-conspirators; there are no "pass through" statements to consider. *See United States v. Charles,* 722 F.3d 1319 (11th Cir. 2013).

The Circuit Court in *Charles* held that a defendant had a right to confront the interpreter who was the declarant in out-of-court testimonial statements that were offered into evidence by the government. *Id.* at 1324. However, in *Charles,* the witness testifying was not the interpreter or the person whose statements the interpreter was translating. Hence, the officer's testimony (third party) could not substitute for confrontation of the interpreter. That state of affairs is not where Rovirosa finds himself. The email exchanges, at least in part, are those between Rovirosa and Avila. Others are between Avila and third parties. Therefore, they are not testimonial statements.

The Court, therefore, determines that the emails and other messages between Rovirosa and Avila, and between Avila and alleged co-conspirators do not violate the Sixth Amendment –

Confrontation Clause.  The fact that discussions were conducted by co-conspirators outside the presence of Rovirosa does not elevate those discussion to "testimonial statement" status.  *See United States v. Gurrols*, 898 F.3d 524, 535 (5th Cir. 2018).  Any dispute concerning what Rovirosa or Avila meant by the language used in their messaging may be refuted by translations offered by Rovirosa.  Moreover, the jury is free to weigh any disputed versions and accept or reject such portions as it chooses.  *See* FRE 801(d)(2)(c).  Hence, Rovirosa's reliance on *United States v. Charles,* 722 F.3d 1319 (11th Cir. 2013) is misplaced.

Based on the foregoing analysis and discussion, the Court HOLDS that Rovirosa's third motion to dismiss should be and it is Hereby Denied.

It is so Ordered.

SIGNED on October 21, 2025, at Houston, Texas.

Kenneth M. Hoyt
United States District Judge