# IN THE UNITED STATES DISTRICT COURT FOR THE
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, § § § | |
| v. § § § | Criminal No. 4:25-cr-00415 |
| § § | **UNDER SEAL** |
| RAMON ALEXANDRO ROVIROSA MARTINEZ, § § § | |
| Defendant. § § § | |

## GOVERNMENT'S RESPONSE TO ROVIROSA'S MOTION TO DISMISS BASED ON THE COURT'S SUPERVISORY POWERS

The United States hereby files its response to the *Motion to Dismiss Case with Prejudice Based on the Court's Supervisory Powers*, Dkt. 112, filed by Defendant Ramon Alexandro Rovirosa Martinez ("Rovirosa").

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ............................................. 1

LEGAL STANDARD......................................................................................................... 4

ARGUMENT ................................................................................................................... 5

    I.    Rovirosa Still Cannot Show Actual Prejudice Relating to the Motion for Release Conditions and Press Release ........................................................................................ 5

    II.    Rovirosa's Claims Regarding His Recorded Interview Are Baseless ................... 7

        A.    Rovirosa's Statements in his Recorded Interview .............................................. 7

        B.    Rovirosa's *Bruton* Claims ........................................................................ 8

    III.    Rovirosa's Arguments Regarding Device Data Are Meritless............................. 10

    IV.    The Court Appropriately Admitted Evidence Pursuant to the Co-Conspirator Hearsay Exception................................................................................................................ 11

    V.    Rovirosa's Arguments Regarding Witness Testimony Are Not Actionable ....... 12

    VI.    The Government Did Not Conduct a "Trial by Ambush" ..................................... 13

CONCLUSION.................................................................................................................. 15

# TABLE OF AUTHORITIES

**CASES**

*Bourjaily v. United States*, 483 U.S. 171 (1987) .......................................................... 12

*Brady v. Maryland*, 373 U.S. 83 (1963) ........................................................................ 4

*Bruton v. United States*, 391 U.S. 123 (1968) ................................................... 7, 8, 9, 10

*United States v. Ayelotan,* 917 F.3d 394 (5th Cir. 2019) ............................................... 12

*United States v. Bundy,* 968 F.3d 1019 (9th Cir. 2020) ................................................. 6

*United States v. Gurrols*, 898 F.3d 524 (5th Cir. 2018) ................................................. 13

*United States v. Panci*, 256 F.2d 308 (5th Cir. 1958) .................................................... 12

*United States v. Powell*, 732 F.3d 361 (5th Cir. 2013) .................................................. 10

*United States v. Swenson*, 894 F.3d 677 (5th Cir. 2018) ............................................. 4, 6

**STATUTES**

18 U.S.C. § 3142 .............................................................................................................. 1, 5

**RULES**

Federal Rule of Criminal Procedure 57(b) ...................................................................... 2

Federal Rule of Criminal Procedure Rule 29(a) ............................................................. 3

Federal Rule of Evidence 801(d)(2)(E) ........................................................................... 11

## INTRODUCTION

The instant *Motion to Dismiss Case with Prejudice Based on the Court's Supervisory Powers* is Rovirosa's fourth motion to dismiss. It largely repeats the same issues as its failed predecessors. In other instances, it just rehashes the same flawed arguments that are currently before the Court in Rovirosa's Motion for Judgment of Acquittal. *See* Dkt. 109. In the latest iteration of his dispositive motions, Rovirosa seeks an extraordinary remedy—he asks this Court to overturn its prior rulings, undo the jury's verdict, and erase the charges against him.

Rovirosa's assertions were wrong before—and during—trial when this Court rejected them, and they are equally wrong after the jury convicted him. This Court should deny Rovirosa's motion and reject his continuing efforts to avoid accountability and re-litigate this Court's rulings.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

On August 6, 2025, a grand jury in the Southern District of Texas indicted Rovirosa and his co-defendant, Mario Alberto Avila Lizarraga ("Avila"). *See* Dkt. 1. In connection with Rovirosa's arraignment on August 11, 2025, the Government filed a Motion to Impose Certain Conditions of Release, pursuant to 18 U.S.C. §§ 3142(c) and 3142(g) ("Motion for Release Conditions"). Dkt. 11. The Motion for Release Conditions included the following:

> Finally, while the offenses with which he has been charged are non-violent in nature, there is evidence that Rovirosa has ties to Mexican cartel members and that he was previously involved in violent conduct in Mexico. Multiple sources and media accounts have also alleged another individual with a close business relationship to Rovirosa is associated with Mexican cartels. Given these alleged links to Mexican cartels, Rovirosa presents a uniquely heightened risk of flight.

*Id.* at 2. The same day, the Government issued a press release in connection with Rovirosa's unsealed Indictment, which included the following statement: "In addition, according to court documents, Rovirosa is alleged to have ties to Mexican cartel members." Dkt. 29-3. Based on feedback from Rovirosa's counsel at the time which raised potential safety concerns, on August

12, 2025, the Government issued a revised press release that removed the foregoing sentence. *See* Dkt. 29-4.

On September 2, 2025, Rovirosa filed a Motion to Strike Under Rule 57(b), citing, among other things, the Government's press release and Motion for Release Conditions. Dkt. 29. On September 8, 2025, Rovirosa filed his first Motion to Dismiss ("First Motion to Dismiss"), again citing the Government's press release and Motion for Release Conditions. Dkt. 33.[1]

On September 18, 2025, the Government responded to Rovirosa's Motion to Strike, laying out the specific bases for the factual allegations in its Motion for Release Conditions and press release. *See* Dkt. 42. Additionally, on September 26, 2025, the Government responded to Rovirosa's First Motion to Dismiss. Dkt. 52.

On September 29, 2025, the Court held a pre-trial conference and heard argument from the parties on the Motion to Strike and the First Motion to Dismiss. The Court noted: "I don't think that the motion carries any weight as far as the trial and presentation of evidence is concerned, unless I'm missing something." Sept. 29, 2025, Hrg. Tr. at 12. On September 30, 2025, the Court denied the Motion to Strike and the First Motion to Dismiss. Dkt. 57. Specifically, the Court ruled:

> [T]he defendant's motion to strike [DE 29] that concerns language in the government's filings concerning condition of release in reference to the defendant, Rovirosa, its prejudicial and improper nature, it is Denied. The parties are, nevertheless, admonished that any such terms or language (cartel) while possibly appropriate for arguments concerning release are inappropriate for trial and will not be tolerated from either party
>
> …
>
> [T]he defendant['s] second filed motion to dismiss based on "the government's outrageous, intentional, and unconstitutional actions in violation of the Fifth and Sixth Amendments["] is Denied. Here, the defendant argues that the government's case presents a false narrative suggesting that the FCPA evolved from a "Mexican

---

[1] On September 11, 2025, Rovirosa filed a second motion to dismiss—based on the statute of limitations. Dkt. 35. At trial, Rovirosa withdrew this motion. *See* Trial Tr. at 866-67.

> drug cartel" investigation and that the defendant was an associate.
>
> The Court has already addressed this claim and simply repeats, such language and inferences will not be tolerated in this trial from either party. The defendant's motion to dismiss is Denied.

Dkt. 57 at 1. On October 6, 2025, Rovirosa filed his Third Motion to Dismiss, citing discovery matters and purported deficiencies with the Government's proposed witnesses and evidence. Dkt. 60. The Government responded to the Third Motion to Dismiss on October 8, 2025. Dkt. 64. The Court and the parties discussed the matters raised in Rovirosa's Third Motion to Dismiss at hearings held on October 2, 2025; October 6, 2025; and October 20, 2025. At the hearing on October 20, 2025, the Court indicated that it would deny Rovirosa's Third Motion to Dismiss. Oct. 20, 2025, Hrg. Tr. at 5-6. On October 21, 2025, the Court issued an eight-page opinion, discussing Rovirosa's arguments in detail and denying them in their entirety. Dkt. 75.

This matter proceeded to trial on December 1, 2025. Consistent with the Court's ruling, not a single person—including the Government's lawyers and witnesses—referenced cartels at trial. On December 4, 2025, at the close of the Government's case-in-chief, Rovirosa orally moved for a judgment of acquittal pursuant to Rule 29(a). Trial Tr. at 838-47. The Court took the matter under advisement. Later that day, following submission of the case to the jury, the Court issued a written order denying Rovirosa's motion. Dkt. 97 at 1-2.

On December 5, 2025, the jury convicted Rovirosa on Counts 1-3 and acquitted him on Count 4. Dkt. 103. Rovirosa filed a Motion for Judgment of Acquittal on December 19, 2025, challenging the sufficiency of the evidence against him, and re-raising issues regarding discovery and the evidence against him. Dkt. 109. The Government responded to Rovirosa's Motion for Judgment of Acquittal on January 9, 2025. Dkt. 115. While his Motion for Judgment of Acquittal was still pending, Rovirosa filed the instant Fourth Motion to Dismiss. Dkt. 112.

3

## **LEGAL STANDARD**

In his Fourth Motion to Dismiss, Rovirosa seeks dismissal of the Indictment with prejudice pursuant to the Court's supervisory powers based on a variety of alleged errors at trial that he (wrongly) characterizes as prosecutorial misconduct. Dkt. 112 at 1.

As Rovirosa notes, the Fifth Circuit's framework for assessing when courts may use their supervisory powers to impose the "extreme sanction" of dismissal is laid out in *United States v. Swenson*, 894 F.3d 677 (5th Cir. 2018). *See* Dkt. 112 at 12. Additionally, in denying Rovirosa's Third Motion to Dismiss, this Court agreed with the Government that *Swenson* was "authoritative" in evaluating alleged violations under *Brady v. Maryland*, 373 U.S. 83 (1963). Dkt. 75 at 6.

In *Swenson*, the Fifth Circuit reversed a district court's dismissal based on alleged *Brady* violations and held that dismissal is only warranted in "extraordinary situations" where there is "intentional misconduct" that prejudices a defendant. The Court noted:

> This court has stressed that even in the case of the most egregious prosecutorial misconduct, an indictment may be dismissed only upon a showing of actual prejudice to the accused… And mere error or oversight is neither gross negligence nor intentional misconduct… Thus, whether the court is acting under its supervisory authority or its duty to protect the constitutional rights of defendants, an indictment may be dismissed only where the defendants' case has been unfairly prejudiced… In other words, the supervisory authority of the district court includes the power to impose the extreme sanction of dismissal with prejudice only in extraordinary situations and only where the government's misconduct has prejudiced the defendant…

*Swenson*, 894 F.3d at 684-685 (internal citations and quotations omitted). The Fifth Circuit added: "[d]ismissal of an indictment with prejudice is a rare result because, even in the face of prosecutorial misconduct, there is a public interest in having indictments prosecuted." *Id.* at 685 (internal citations and quotations omitted).

**ARGUMENT**

I. **Rovirosa Still Cannot Show Actual Prejudice Relating to the Motion for Release Conditions and Press Release**

Rovirosa claims that he suffered "uncurable prejudice" from the Motion for Release Conditions and the Government's press release. Dkt. 112 at 2-5, 16-20. Rovirosa insists that "there is no way to 'unring the bell' in this case, and no potential foreign witness will ever want to be involved in a legal criminal trial of a person who has been accused of being a member of a cartel." *Id.* at 20.

This is nothing new—Rovirosa raised these points at length in his Motion to Strike (Dkt. 29) and his First Motion to Dismiss (Dkt. 33). As the Government noted in its responses, the cartel-related allegations described in the Motion for Release Conditions were based on information gathered from multiple sources during the Government's investigation. Dkt. 42 at 6-7, 9-10; Dkt. 52 at 5-6. And the Government brought this information to the Court's attention pursuant to the mandates of the Bail Reform Act. *See* 18 U.S.C. § 3142(g) ("[t]he judicial officer shall … take into account the available information concerning," among other things, "the history and characteristics of the person," which includes "the person's character," "community ties," and "past conduct.") (emphasis added). Moreover, as noted above, this Court already considered and rejected Rovirosa's arguments, ruling that "such language and inferences [i.e., relating to cartels] will not be tolerated in this trial from either party." Dkt. 57 at 1.

The course of the actual trial proceedings further negates any allegation that the specter of cartels had any prejudicial impact on Rovirosa's case or rights. Consistent with the Court's pre-trial rulings, no party or witness ever mentioned the word "cartel" or alleged or insinuated that Rovirosa was associated with a cartel. Likewise, during voir dire, not a single member of the venire acknowledged hearing about the case—much less any allegation that Rovirosa was affiliated with

5

individuals associated with cartels.

Nonetheless, after being convicted, Rovirosa now converts his argument into a self-fulfilling prophecy by insisting that the Government's conduct somehow precluded him from calling witnesses at trial: "The foreseeable and actual consequence of that conduct was the destruction of Mr. Rovirosa's ability to secure witnesses, the elimination of live testimony subject to cross-examination, and the collapse of any meaningful defense." Dkt. 112 at 15.

Rovirosa is wrong. If there was a "collapse[d]" defense, it collapsed under the weight of the evidence, not because of anything the Government did. Rovirosa cannot credibly blame the Government for the absence of a non-existent exculpatory witness that could have reinterpreted Rovirosa's plainly incriminating messages and rewritten history to undo the bribes that Rovirosa explicitly discussed, authorized, and paid.

Furthermore, while the Government is not entitled to Rovirosa's defense strategies, Rovirosa could have made an *ex parte* submission to the Court that demonstrated the actual prejudice he suffered, including witnesses he planned to call and testimony he expected to elicit, but that were not available to him due to the Government's alleged misconduct. But Rovirosa did not do so, nor could he—there are no such witnesses, and his claimed prejudice is non-existent.

In sum, by resting on far-fetched and unsubstantiated allegations regarding his "[in]ability to secure witnesses" (Dkt. 112 at 15), Rovirosa comes nowhere close to showing the actual prejudice he must demonstrate to warrant "the extreme sanction" of dismissal of the Indictment with prejudice. *Swenson*, 894 F.3d at 684-85.[2]

---

[2] Rovirosa dedicates multiple pages of his Fourth Motion to Dismiss to discussing the Ninth Circuit's decision in *United States v. Bundy,* 968 F.3d 1019 (9th Cir. 2020). Dkt. 112 at 12-16. *Bundy* involved multiple instances of the government discovering and disclosing evidence mid-trial that directly undermined the government's central theory of the case. *Bundy,* 968 F.3d at 1023-1030. Accordingly, the district court found substantial prejudice to the defendant and the Ninth Circuit affirmed. *Id.* at 1042. *Bundy* is entirely inapposite—here, there were no mid-trial disclosures and no identifiable prejudice. Rather, the Court's prior analysis of *Swenson* in its October 21, 2025, Order (which addressed the production of Avila device data) is dispositive on this issue. *See* Dkt. 75.

## II. Rovirosa's Claims Regarding His Recorded Interview Are Baseless

Rovirosa makes two arguments in his Fourth Motion to Dismiss regarding his recorded interview: (1) the Government mischaracterized Rovirosa's statements in his recorded interview; and (2) presenting the full audio recording to the jury violated Rovirosa's constitutional rights under *Bruton v. United States*, 391 U.S. 123 (1968). Dkt. 112 at 9-10, 20-21. Both points fail, and neither entitles him to dismissal with prejudice.

### A. Rovirosa's Statements in his Recorded Interview

Rovirosa disagrees with the Government that he admitted to any misconduct in his recorded interview. Rather, he insists that his incriminating admission related to Roma Energy, an entity not referenced in the Indictment. Dkt. 112 at 9-10.

Rovirosa already raised these issues in his pending Motion for Judgment of Acquittal. Dkt. 109 at 6-7, 10, 13, 17, 19-20. He repeats them in his reply in support of his Motion for Judgment of Acquittal, arguing that the Government "mischaracterize[ed]" Rovirosa's statement he has paid bribes in Mexico, "as it implies that Roma Energy Holdings is a 'company in Mexico' that was part of the Indictment, which it is not." Dkt. 116 at 6. Rovirosa further insists that his "actual statement, taken in context, was far more speculative than the Government's recounting of it and not an admission of guilt." *Id.*

This "context" was precisely what Rovirosa could, and did, argue to the jury. As the Government has already noted in its response to the Motion for Judgment of Acquittal, Rovirosa's self-serving interpretation of his own statements was "not binding on the jury." Dkt. 115 at 23. Rovirosa's claim that he was not actually admitting to bribery and that "Roma" was something else entirely was something that the jurors were free to consider and accept or reject. Rovirosa can hardly fault the jury if it was unable to reconcile Rovirosa's incriminating messages with his counsel's insistence that his recorded interview statements were anything other than an admission

7

of wrongdoing.

Furthermore, as to Rovirosa's assertion that Roma Energy was distinct from the charged entities, that claim is false. "Roma" was the umbrella entity that Rovirosa used for his various energy companies. For example, the jury heard testimony concerning GX 204-T (a February 14, 2020, WhatsApp message from Avila to ███████████████████████████. That message states: "The company, ███████████, is an affiliate of Roma Energy and ███████████. we have worked the past 15 years directly for Pemex." Trial Tr. at 663. As the Court may recall, ███████████████████████ were referenced in the Indictment and featured prominently in the charged conduct. As such, Rovirosa's claims regarding the weight to be accorded to his interview statements—and the purported distinctions between Roma Energy and the companies directly implicated in the charged conduct—are irrelevant and do not warrant dismissal of the Indictment with prejudice.

### B. Rovirosa's *Bruton* Claims

Rovirosa asserts that his recorded interview violated his Sixth Amendment rights under *Bruton* because it included statements attributed to Avila. Dkt. 112 at 9-10.

Rovirosa raised these arguments in his pending Motion for Judgment of Acquittal. Dkt. 109 at 19-21. Again, the Government has already responded to Rovirosa's claims, arguing that: (1) <u>Rovirosa</u>, not the Government, insisted on the full introduction of the recorded interview, thereby inviting any purported error; and (2) any error was harmless considering the ample other evidence of Rovirosa's guilt, and the fact that the Government never referenced Avila's statements. Dkt. 115 at 26-28. In his reply in support of his Motion for Judgment of Acquittal, Rovirosa contends that this is all the Government's fault and asks the Court to overlook his counsel's strategic decisions at trial, arguing that "Defense counsel never agreed nor wanted the tape played and objected to the tape and its contents from the inception of the case." Dkt. 116 at 5.

8

Rovirosa's claims fail. Indeed, his arguments underscore that the presentation of the full recorded interview was a result of his deliberate choice at trial.

In his reply in support of his Motion for Judgment of Acquittal, Rovirosa concedes that the Government's initial proposal was to play five excerpts from the audio recording and that "[t]hese exhibits excluded *Bruton* material." Dkt. 116 at 2. Rovirosa also concedes that it was his counsel's idea—not the Government's—to play the full recording: "Defense counsel said this 'cherry-picking' was inappropriate. And if the tape was coming in, the Government should play the whole tape so that the jury could have context of the entirety of the interview and not rely solely on the Government's hand-picked, out-of-context excerpts." *Id.* at 3. That is, rather than suggesting that the Government play isolated portions of the interview, Rovirosa's counter-proposal—as he expressed multiple times—was to present the full interview to the jury. *See* Trial Tr. at 50 ("If we're going to—*let's put the whole thing in. Let the jury hear the whole thing, how it really went down.*") (emphasis added).

After Rovirosa insisted on presenting the full recording, the Government twice raised the potential *Bruton* issues. *See* Trial Tr. at 57-58. In response, Rovirosa was silent on the issue, never acknowledging that his counter-proposal might be problematic, or otherwise modifying his proposal to include redactions for potential *Bruton* material. Rovirosa's decision was clearly strategic. In pretrial filings and at trial, Rovirosa's counsel repeatedly argued that they viewed the full interview as exculpatory in nature. *See*, *e.g.*, Dkt. 40 at 8 ("During a ninety-minute interview by government agents with Mr. Rovirosa at his home in February 2024, which he conducted without counsel, Mr. Rovirosa outlined his entire position in this case. No surprises, palms up."). Now, Rovirosa claims surprise that the Government did exactly what he requested and what the Court ordered, claiming that: "Mr. Rovirosa fully expected that the recording would be redacted

9

to eliminate any reference to Mr. Avila before it was played to the jury, as the Government had earlier removed the Bruton information from the snippets it wanted to play." Dkt. 116 at 4. But Rovirosa's purported surprise is not credible, given his silence on the issue at the time and the fact that his counsel expressly revisited Avila's statements when cross-examining SA Wood: "You first tell him [Rovirosa] that Mr. Avila said he had done something wrong. That's why you were there?" Trial Tr. at 335.

Moreover, Rovirosa does not address the fact that, even if there was error, it was harmless in light of the other overwhelming evidence—including WhatsApp messages from Rovirosa and his co-conspirators—that the Government presented to the jury in closing argument. *See* Dkt. 115 at 28; *United States v. Powell*, 732 F.3d 361, 379 (5th Cir. 2013) ("It is well established that a *Bruton* error may be considered harmless when, disregarding the co-defendant's confession, there is otherwise ample evidence against a defendant.") (internal citations and quotations omitted).

In sum, the presentation of Rovirosa's recorded interview was, if anything, invited, harmless error. Regardless, Rovirosa is well short of demonstrating the actual prejudice necessary to secure dismissal with prejudice.

### III.    Rovirosa's Arguments Regarding Device Data Are Meritless

Rovirosa contends that the Government failed to produce "forensic copies of the electronic devices that contained the messages that the Government relied on." Dkt. 112 at 20.

Again, Rovirosa raised this point in his Motion for Judgment of Acquittal. *See* Dkt. 109 at 25-27. The Government responded and addressed Rovirosa's false claims. *See* Dkt. 115 at 32-34. Rovirosa's reply in support of his Motion for Judgment of Acquittal was silent on his device-related claims and did not challenge the Government's recitation of the facts and procedural history relating to the device data. *See* Dkt. 116.

Answering further, the Government attaches as Exhibit 1 a letter the Government's filter

team sent to Rovirosa on September 12, 2025, confirming that the Government had hand-delivered the forensic image of Rovirosa's device the day before, September 11, 2025:

> The material provided to you by hand-delivery yesterday included the following from the Filter Team in the above captioned matter: a re-production of the material we previously sent via FedEx as well as forensic images in UFDR format of an iPhone 13 and an iPhone 15 belonging to your client, Ramon Alexandro Rovirosa Martinez.

The Government is also attaching as Exhibit 2 the email chain where the Government's filter team transmitted the letter. While Rovirosa's counsel acknowledged receipt of the letter, counsel never stated that they did not receive the forensic image referenced in the letter. Rovirosa raised that claim for the first time in his Motion for Judgment of Acquittal.

Accordingly, this Court should reject Rovirosa's meritless device-related arguments.

### IV. The Court Appropriately Admitted Evidence Pursuant to the Co-Conspirator Hearsay Exception

Rovirosa asserts that the Government misled the Court with respect to statements in furtherance of the conspiracy under FRE 801(d)(2)(E). Dkt. 112 at 8, 21-22. Rovirosa further insists that the Government improperly relied on co-conspirator statements alone to establish the existence of the conspiracy. *Id.* at 21.

Again, this is merely an attempt to revisit the Court's prior written rulings. Specifically, Rovirosa raised similar points in his Third Motion to Dismiss. Dkt. 60 at 8-9. And this Court considered and rejected Rovirosa's position. Dkt. 75 at 6-8. Rovirosa raised these issues again in his pending Motion for Judgment of Acquittal. Dkt. 109 at 21-22. The Government responded, explaining that, among other things, the evidence of the conspiracy "includ[ed] messages from Rovirosa himself." Dkt. 115 at 28-29. Rovirosa did not address the Government's arguments in his reply in support of his Motion for Judgment of Acquittal. *See* Dkt. 116.

Rovirosa offers nothing new in his Motion for Judgment of Acquittal. Critically, Rovirosa

simply cannot rebut the fact that his own messages establish a conspiracy with Avila and others, nor does he address the fact that he sent messages directly to Avila, which Avila then screenshotted and forwarded to ▮▮▮ in furtherance of the conspiracy.[3]

### V. Rovirosa's Arguments Regarding Witness Testimony Are Not Actionable

Rovirosa contends that he is entitled to dismissal with prejudice because "the Government presented its case without any witnesses who had actual knowledge of the events alleged in the Indictment." Dkt. 112 at 22. In addition to the law enforcement agent witnesses, Rovirosa takes issue with the testimony from David Lopez (the Government's expert in Mexican law) and Carlos Espinosa Barba (a former PEMEX employee who pled guilty in an unrelated matter). *Id.* at 5-6, 22.

Rovirosa raised these exact issues in his pending Motion for Judgment of Acquittal. Dkt. 109 at 27-29. The Government responded, highlighting the extensive discussions that the parties had on these matters before and during trial. Dkt. 115 at 30-32, 34-36. Rovirosa did not offer anything further in his reply in support of his Motion for Judgment of Acquittal. *See* Dkt. 116.

In his Fourth Motion to Dismiss, Rovirosa largely rehashes the same arguments that this Court already rejected. *See, e.g.*, Sept. 29, 2025 Hrg. Tr. at 18-22, 27; Trial Tr. at 562-63. This Court need not retread old ground and further indulge Rovirosa's baseless claims.

Rovirosa's assertions regarding the evidence against him continue to be rooted in his long-

---

[3] *See, e.g.*, GX 203-A08-T (July 9, 2019); GX 203-A13-T (July 18, 2019); GX 204-A07-T (January 28, 2020); and GX 204-A15-T (February 14, 2020).

Additionally, Rovirosa mistakenly states that the Government relied on the Fifth Circuit's decision in *United States v. Ayelotan,* 917 F.3d 394 (5th Cir. 2019) for the proposition that "electronic communications, without corroborating evidence, are sufficient to find a conspiracy." Dkt. 112 at 21-22. Not true. The Government previously cited *Ayelotan* for the well-settled proposition that co-conspirator statements do not implicate the Confrontation Clause. *See* Dkt. 64 at 12; Dkt. 59 at 2-3. Indeed, Rovirosa's argument on this point appears to be reflective of his prior reliance on *United States v. Panci*, 256 F.2d 308 (5th Cir. 1958), which is no longer good law in light of the Supreme Court's ruling in *Bourjaily v. United States*, 483 U.S. 171 (1987). *See* Dkt. 64 at 11-12 (discussing the holding in *Bourjaily* that trial courts "can indeed consider the proffered hearsay statements of a co-conspirator to determine whether a conspiracy existed").

standing complaint that the Government did not present any live witnesses with direct knowledge of the underlying charged events and that the Government admitted WhatsApp messages without testimony from the parties that exchanged those messages. Dkt. 112 at 23.

After months of litigating these exact issues, Rovirosa still has not produced any authority in support of his position. *See, e.g.*, Dkt. 43 at 10-12; Dkt. 60 at 8-9; Dkt. 109 at 2-3, 9-10. Rovirosa's failure is telling. As this Court ruled in denying Rovirosa's Third Motion to Dismiss—and the Fifth Circuit has repeatedly held—co-conspirator statements made in furtherance of the conspiracy are non-testimonial:

> The Court, therefore, determines that the emails and other messages between Rovirosa and Avila, and between Avila and alleged co-conspirators do not violate the Sixth Amendment—Confrontation Clause. The fact that discussions were conducted by co-conspirators outside the presence of Rovirosa does not elevate those discussion to "testimonial statement" status.

Dkt. 75 at 7-8 (citing *United States v. Gurrols*, 898 F.3d 524, 535 (5th Cir. 2018)).

Accordingly, neither the Constitution nor the Federal Rules of Evidence allow Rovirosa to compel live testimony from a co-conspirator before that co-conspirator's statements are offered into evidence. This Court should again reject Rovirosa's claims.

## VI. The Government Did Not Conduct a "Trial by Ambush"

Rovirosa insists that, because "most of the Government's evidence was not presented to the jury during the trial itself," the Government conducted a "trial by ambush" that violated his constitutional rights. Dkt. 112 at 10, 22.

Rovirosa raised this argument in his Motion for Judgment of Acquittal. Dkt. 112 at 8-17. The Government responded, correcting Rovirosa's misstatements regarding his inability to challenge the evidence. Dkt. 115 at 14-15. Rovirosa did not further discuss this matter in his reply in support of his Motion for Judgment of Acquittal. *See* Dkt. 116.

As the Government previously explained, the Government provided its summary exhibit

13

(*i.e.*, a compilation of the key text messages and other evidence) to Rovirosa nearly two months before trial. Dkt. 115 at 14. The summary exhibit was a detailed roadmap of the key evidence substantiating the charges against Rovirosa, with citations to the underlying text messages. Indeed, the Government had provided all of the underlying text messages to Rovirosa by late September 2025. Moreover, SA Sanchez testified regarding some of these messages on direct examination. *See, e.g.*, Trial Tr. at 618-25, 636-41. And Rovirosa's counsel asked SA Sanchez about some of the text messages on cross-examination. *See id.* at 657-58. Additionally, in closing argument, Rovirosa's counsel presented his own views regarding the text messages. *See id.* at 959-62.

Thus, armed with both the underlying evidence and the opportunities to discuss that evidence, Rovirosa cannot now credibly claim that the Government "ambush[ed]" him. Rovirosa has again failed to identify any actual prejudice that warrants the extreme sanction of dismissal with prejudice pursuant to the Court's supervisory powers.[4]

---

[4] In his reply in support of his Motion for Judgment of Acquittal, Rovirosa asserts that it was "highly false, highly inflammatory, and extremely prejudicial" for the Government to state that the American Express credit card used to buy a treadmill for ▇▇▇ belonged to Rovirosa. Dkt. 116 at 7. SA Sanchez testified that the Government had traced the American Express card to Rovirosa. Trial Tr. at 611-612. Rovirosa's counsel did not object at that time. On cross-examination, Rovirosa's counsel asked SA Sanchez regarding the treadmill, but did not ask about the credit card. Trial Tr. at 660-61. If counsel had questioned SA Sanchez on the basis for her statement, she would have disclosed that bank records from Mexico—and Rovirosa's text messages—made clear that Rovirosa controlled the credit card. Nonetheless, Rovirosa cannot ignore a potential challenge to witness testimony and then seek to litigate it after the jury has rendered its verdict.

## CONCLUSION

For the foregoing reasons, the Government respectfully requests that the Court deny Rovirosa's Fourth Motion to Dismiss.

Dated: January 22, 2026

          Respectfully submitted,
          Nicholas J. Ganjei
          United States Attorney

          Lorinda I. Laryea
          Chief
          Criminal Division, Fraud Section

          */s/ Brad R. Gray*
          Brad Gray
          Assistant United States Attorney
          Southern District of Texas

          */s/ Abdus Samad Pardesi*
          Lindsey D. Carson
          Abdus Samad Pardesi
          Paul Ream
          Trial Attorneys
          Criminal Division, Fraud Section

## CERTIFICATE OF SERVICE

On January 22, 2026, I electronically filed this document through the CM/ECF system and served this filing via email to counsel of record.

          */s/ Brad R. Gray*
          TBD